IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MATTHEW F. BANISZEWSKI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 05-470J |
| ) | |
| JO ANNE B. BARNHART, ) | JUDGE GIBSON |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION and ORDER OF COURT**

**GIBSON, J.**

This matter comes before the Court on the parties' cross-motions for summary judgment and the briefs in support thereof (Document Nos. 10-13). This Court has jurisdiction of this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons that follow, the Court will deny the Motion for Summary Judgment filed by the Plaintiff (Document No. 10) and grant the Motion for Summary Judgment filed by the Defendant (Document No. 12).

Plaintiff Matthew F. Baniszewski ("Plaintiff") protectively filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under Titles II and XVI of the Social Security Act on July 24, 2002. R. p. 17. The claims were initially denied on February 21, 2003. *Id.* They were denied again on September 18, 2003, in a decision issued by Administrative Law Judge John J. Mulrooney II ("ALJ"). *Id.*

On September 29, 2003, the Plaintiff protectively filed new applications for DIB and SSI. *Id.*

1

After the claims were initially denied on June 8, 2004, a request for a hearing was filed on August 5, 2004. *Id.* A hearing was held before the ALJ on March 4, 2005, in Johnstown, Pennsylvania. R. p. 32. The Plaintiff, who was represented by counsel, appeared and testified at the hearing. R. pp. 37-65. Mark L. Heckman, an impartial vocational expert, was present for the entire hearing and testified before its conclusion. R. pp. 65-69.

On April 5, 2005, the ALJ issued a decision which was unfavorable to the Plaintiff. R. pp. 17-27. The Appeals Council denied the Plaintiff's request for review on November 3, 2005, thereby making the ALJ's decision the final decision of the Commissioner of Social Security in this case. R. pp. 9-11. The Plaintiff filed a complaint in this matter on December 30, 2005. Document No. 3. Jo Anne Barnhart, Commissioner of Social Security ("Commissioner") filed an answer on March 2, 2006. Document No. 5. The Plaintiff and the Commissioner filed cross-motions for summary judgment on April 20, 2006, and May 22, 2006, respectively. Document Nos. 10 & 12.

A District Court's review of the administrative determinations of the Commissioner of Social Security is governed by the standard of whether the record contains substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842, 853 (1971). Substantial evidence is more than just a scintilla of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted); *see also, Stewart v. Secretary*, 714 F.2d 287 (3d Cir. 1983). In discussing this standard of review, the Third Circuit has stated:

> This oft-cited language is not, however, a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is not merely a quantitative exercise.

2

> A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence–particularly certain types of evidence (e.g., that offered by treating physicians)–or if it really constitutes not evidence but mere conclusion. See *id.* at 706 ("'Substantial evidence' can only be considered as supporting evidence in relationship to all the other evidence in the record.") (footnote omitted). The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

*Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). *De novo* review of the facts is prohibited and deference must be given to the Commissioner's findings unless there is an absence of substantial evidence to support such findings in the record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986); 42 U.S.C. § 405(g).

When resolving the issue of whether a claimant is disabled and therefore entitled to Disability Insurance Benefits (DIB) or Supplemental Security Income (SSI) benefits, the Commissioner uses a five-step sequential evaluation process. The U.S. Supreme Court recently summarized this five-step process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is

3

> determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 379-380, 157 L.Ed.2d 333, 339-340 (2003) (footnotes omitted; brackets in original).

In his decision of April 5, 2005, the ALJ determined that there was no reason to reopen his prior decision of September 18, 2003. R. p. 18. Proceeding to the sequential evaluation process, he concluded that the Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. R. p. 25. The Plaintiff was found to be suffering from degenerative disc disease of the cervical spine with partial fusion at C2-C3, small joint effusion of the right knee, chronic right lumbar radiculopathy, fibromyalgia, osteoarthritis of both knees, degenerative disc disease of the lumbar spine, lumbago, reactive airway disease, pain disorder, peripheral neuropathy, adjustment disorder, borderline personality disorder and major depressive disorder. R. p. 26. These impairments were deemed to be "severe" for purposes of 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). *Id.* The Plaintiff's status post inguinal hernia repair and hypertension were not found to be severe. *Id.* The ALJ concluded that these impairments did not meet or medically equal any impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id.* In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ made the following finding with respect to the Plaintiff's residual functional capacity:

> The claimant has the residual functional capacity to engage in a range of sedentary work that involves occasional balancing, stooping or climbing of ramps or stairs; avoids kneeling, crouching, crawling or climbing of ladders, ropes or scaffolds; avoids frequent

4

overhead work; affords a sit/stand option; no more than occasional overhead reaching; occasional pushing and/or pulling with the lower extremities, including the operation of pedals; avoids concentrated exposure to fumes, odors, dusts, gases or environments with poor ventilation; involves no more than simple, routine, repetitive tasks, not performed in a fast paced environment; only simple, work related decisions; relatively few work place changes; no more than occasional interaction with supervisors or coworkers and avoids all interaction with the general public.

R. p. 26. On the basis of this assessment, the ALJ determined that the Plaintiff could not return to any of his past relevant work. *Id.*

The Plaintiff was 42 years of age on November 30, 2001, which was his alleged onset date. *Id.* At the time of the ALJ's decision, the Plaintiff was 45 years of age with a college education. *Id.* Based on the applicable residual functional capacity and vocational assessments, the ALJ concluded that the Plaintiff could work as a product inspector, a nut sorter, an ampoule sealer, or a surveillance system monitor. R. pp. 26-27. Mr Heckman's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. § 423(d)(2)(A). R. pp. 65-69.

In support of his motion for summary judgment, the plaintiff makes three distinct arguments. First, he argues that the ALJ failed to properly weigh his subjective complaints of disabling pain. Document No. 11 pp. 14-17. Second, he contends that the ALJ ignored his chronic fatigue syndrome, thereby making the analysis incomplete and insufficient. *Id.* p. 17. Third, he asserts that the ALJ erred in using evidence of his daily activities in order to establish his ability to engage in substantial gainful activity. *Id.* pp. 18-19. The Court will proceed to address each argument in turn.

The Plaintiff's first argument centers on the ALJ's conclusion that his testimony regarding disabling pain was not totally credible. Document No. 11 pp. 14-17. "An ALJ must give serious

5

consideration to a claimant's subjective complaints of pain, even where those complaints are not supported by objective evidence." *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993). While the claimant must produce objective evidence of some medical condition that could reasonably be expected to produce pain, he need not produce objective evidence of the pain itself. *Id.* "Where medical evidence does support a claimant's complaints of pain, the complaints should then be given great weight and may not be disregarded unless there exists contrary medical evidence." *Id.* at 1067-1068 (internal quotation marks omitted).

"Pain itself may constitute a disabling impairment." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276, n. 10 (3d Cir. 1987). Nonetheless, pain certainly cannot be equated with disability. The governing law recognizes "a distinction between the issue of the existence of a medical condition and the issue of the existence of statutory disability." *Kuzmin v. Schweiker*, 714 F.2d 1233, 1237 (3d Cir. 1983). One can certainly have a pain-producing medical condition and nevertheless remain capable of engaging in substantial gainful activity. The Plaintiff does not argue that he suffers from an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Therefore, he cannot establish the existence of statutory disability merely by showing that he suffers from a *potentially disabling* impairment. Instead, he must establish that his impairments are disabling *in his case*.

As noted earlier, one of the impairments found by the ALJ to be "severe" was the Plaintiff's fibromyalgia. The Plaintiff bases much of his argument on the unique nature of this impairment, which tends to manifest itself in a manner which leaves no objective medical evidence. Document No. 11 pp. 14-15. The U.S. Court of Appeals for the Seventh Circuit, in *Sarchet v. Chater*, 78 F.3d 305 (7th Cir. 1996), explained the characteristics of fibromyalgia:

6

> Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are 'pain all over,' fatigue, disturbed sleep, stiffness, and–the only symptom that discriminates between it and other diseases of a rheumatic character–multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch. All these symptoms are easy to fake, although few applicants for disability benefits may yet be aware of the specific locations that if palpated will cause the patient who really has fibromyalgia to flinch.

*Sarchet*, 78 F.3d at 306. The Plaintiff is correct to note that the Court of Appeals, in *Sarchet*, stated that fibromyalgia can be disabling. Document No. 11 p. 15. The statement, however, must not be taken out of context. The Court of Appeals actually stated as follows: "Some people may have such a severe case of fibromyalgia as to be totally disabled from working, *but most do not* and the question is whether Sarchet is one of the *minority*." *Sarchet*, 78 F.3d at 307 (citation omitted; emphasis added). There is no question that the Plaintiff suffers from fibromyalgia. The ALJ expressly determined that the Plaintiff suffered from this "severe" impairment. R. p. 26. The dispositive question before the ALJ was whether the Plaintiff was in the *minority* of those with fibromyalgia who were unable to engage in substantial gainful activity.

In the instant case, there is no question that the ALJ appreciated the nature of fibromyalgia. The transcript of the hearing makes this abundantly clear:

Q   Well, to the–to this extent, let me put your mind at ease. The Social Security Administration has recognized that fibromyalgia is real, that people have it, that it's accurately diagnosed.

A   Uh-huh.

Q   I believe that it's real, and I'll tell you right now that I believe your diagnosis of

7

> it, and I believe that it's severe. So, if your concern is that people–that you're surrounded by people that don't believe in fibromyalgia–
>
> A    Uh-huh.
>
> Q    –allow me to put your mind at ease. I'm aware that it's real. I'm aware that you have a valid diagnosis of it, and I'm already telling you that one of the things that I need to determine is whether it's severe, and I've already determined that it's severe in your case. So, if that's something that's concerning you, put your mind at ease about that.

R. p. 63. In *Sarchet*, the Court of Appeals was concerned that the ALJ had failed to understand the impact that fibromyalgia can have on an individual's ability to work. *Sarchet*, 78 F.3d at 307-308. For this reason, a remand was necessary.[1] *Id.* at 309. The same cannot be said with respect to this case.

The Court acknowledges that the Plaintiff has produced evidence to support his contention that his pain was disabling. In a letter dated December 27, 2004, Dr. Ralph C. Auchenbach, a treating physician, opined that the Plaintiff's pain had the effect of incapacitating him, thereby precluding him from becoming gainfully employed in the foreseeable future. R. p. 689. The law governing an ALJ's treatment of a treating physician's opinion is clearly established. "Where a treating source's opinion on the nature and severity of a claimant's impairment is well-supported by medically acceptable clinical

---

[1] In *Sarchet*, the Court of Appeals was influenced by factors other than the ALJ's misunderstanding of fibromyalgia. The panel was concerned that the tone of the ALJ's opinion exhibited bias against the claimant, and that the ALJ may have had an "unshakable commitment" to the denial of the claim. *Sarchet*, 78 F.3d at 309. For this reason, the panel took the extraordinary step of recommending that the claimant's case be transferred to a different ALJ on remand. *Id.* The instant case does not raise similar concerns. Not only does the record indicate that the ALJ fully appreciated the consequences of the Plaintiff's diagnosis of fibromyalgia, but the tone of the hearing transcript suggests that the ALJ conducted the hearing in a very fair and courteous manner. He was very honest with the Plaintiff, explaining that he fully understood that the existence of fibromyalgia was a reality. R. p. 63. On the other hand, the ALJ was also honest with the Plaintiff about the fact that his relatively young age would most likely decrease his chances of establishing that he was statutorily disabled. R. p. 70. The Court is convinced that the ALJ took the Plaintiff's subjective complaints seriously. For this reason, the language in *Sarchet* provides no basis for setting the Commissioner's decision aside.

8

and laboratory diagnostic techniques and is not inconsistent with the other evidence in the claimant's case record, it will be given controlling weight." *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001)(internal quotation marks and brackets omitted); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Even when they are not entitled to controlling weight, "[t]reating physicians' reports should be accorded great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)(internal quotation marks omitted). "The ALJ must consider the medical findings that support a treating physician's opinion that a claimant is disabled." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).

Despite the degree of weight which must be given to the opinion of a treating physician, "a statement by a plaintiff's treating physician supporting an assertion that [he] is 'disabled' or 'unable to work' is not dispositive of the issue." *Adorno v. Shalala*, 40 F.3d 43, 47-48 (3d Cir. 1994). The ultimate question of disability is expressly reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1). Where medical evidence contained in the record contradicts the conclusion of a treating physician, the ALJ may reject that conclusion. *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317. When this Court's jurisdiction is invoked pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), the Commissioner's decision will be affirmed if it is supported by substantial evidence. As long as the Commissioner's decision is supported by substantial evidence, the Court will

9

not set that decision aside even if it would have decided the factual inquiry differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

Within the context of the surrounding evidence, and considering the applicable standard of review, the Court cannot set the Commissioner's decision aside on the basis of Dr. Auchenbach's opinion.[2] As the ALJ pointed out, Dr. Auchenbach's letter "was not specific as to what, if any, work related limitations [his] conclusion [was] based upon." R. p. 23. Although Dr. Auchenbach's opinion was given "significant weight," the ALJ determined that it was not entitled to "controlling weight." *Id.*

In his second argument, the Plaintiff contends that the ALJ disregarded his chronic fatigue syndrome. Document No. 11 p. 17. The U.S. Court of Appeals for the Third Circuit has recognized that chronic fatigue syndrome is universally recognized as a "severe disability," even though it has "no known etiology[.]" *Mitchell v. Eastman Kodak Company*, 113 F.3d 433, 443 (3d Cir. 1997). Consequently, it may not be possible for a claimant to submit objective clinical evidence of such an impairment. *Id.* at 442-443. Nevertheless, the Plaintiff must do more than merely assert that he has a given impairment. Even in his brief, the Plaintiff makes no attempt to identify what portion of the record supports his contention that he suffers from chronic fatigue syndrome. Document No. 11 p. 17. The Commissioner apparently believes that the Plaintiff is basing his argument on a treatment note dated September 24, 2004. Document No. 13 p. 23; R. p. 666. That note, however, refers to a diagnosis

---

[2] Given the sequence of the Plaintiff's specific arguments, the Court will discuss the remaining evidence while addressing the third argument made in the Plaintiff's brief. Because the Plaintiff appears to support his argument regarding his subjective complaints with Dr. Auchenbach's letter, this particular piece of evidence is relevant to the Plaintiff's first argument.

10

of "chronic fibromyalgic syndrome." R. p. 666. Furthermore, as the Commissioner points out, Dr. Auchenbach did not mention chronic fatigue syndrome in his letter of December 27, 2004, which was written for the express purpose of supporting the Plaintiff's contention that he could not work to pay his student loan bills. Document No. 13 p. 23; R. p. 689. It is true that the ALJ was required to consider all of the claimant's impairments in combination, and to incorporate any resulting functional limitations into his residual functional capacity assessment. *Burnam v. Schweiker*, 682 F.2d 456, 458 (3d Cir. 1982). It is also true, however, that an ALJ is not required to make reference to every treatment note, especially where, as here, the claimant's medical records are voluminous. *Fargnoli*, 247 F.3d at 42. Since the Plaintiff cannot point to evidence establishing the existence of chronic fatigue syndrome at this stage, the Court cannot fault the ALJ for failing to address it at the administrative level.

In his third and final argument, the Plaintiff argues that the ALJ placed too much emphasis on his activities of daily living in order to discredit his allegation of disability. Document No. 11 pp. 18-19. At the outset, it is worth noting the specific language of the regulations relied upon by the ALJ:

> Factors relevant to your symptoms, such as pain, which we will consider include:
> (i) Your daily activities;
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

11

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). It is clear that, under the applicable regulations, a claimant's activities of daily living are a valid factor to be considered by the ALJ when conducting an inquiry as to the reliability of the claimant's subjective complaints. Social Security Ruling 96-7p also recognizes the claimant's daily activities as a factor to be considered by the ALJ. 61 Fed. Reg. 34483.

The governing law does, of course, recognize that evidence of sporadic or occasional daily activities is of minimal value when it is contradicted by a large amount of competent medical evidence. In *Frankenfield v. Bowen*, 861 F.2d 405 (3d Cir. 1988), the U.S. Court of Appeals for the Third Circuit held that it was impermissible for an ALJ to reject a considerable amount of medical evidence based solely on his observation of the claimant at the hearing, and the claimant's testimony that he took care of his own personal needs, performed limited household work, and made occasional trips to church. *Frankenfield*, 861 F.2d at 408. Very recently, the U.S. Court of Appeals for the Eighth Circuit noted that "the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work." *Swope v. Barnhart*, 436 F.3d 1023, 1026, n. 4 (8th Cir. 2006), quoting *Hogg v. Shalala*, 45 F.3d 276, 278 (8th Cir. 1995). Consequently, an ALJ is not free to reject medical evidence consistent with a finding of disability based solely on the ability of a claimant to engage in occasional activities of daily living.

In the instant case, the Court is convinced that the ALJ relied on competent medical evidence, as well as the Plaintiff's activities of daily living, in order to reach his conclusion that the Plaintiff was not disabled. For instance, the ALJ properly weighed a letter from Dr. Roger D. Anderson, which was specific as to the nature of the Plaintiff's functional limitations. In that letter, Dr. Anderson stated that the Plaintiff sustained several injuries in a November 30, 2001, traffic accident. R. p. 209. These

injuries included bulging of the cervical discs (C-5-C-6), chronic right L4-5 radiculopathy, right knee joint effusion, cervical hyperflexion/hyperextension injury, lumbar strain/sprain and lumbar radiculopathy. *Id.* Dr. Anderson opined that the Plaintiff's injuries resulted in 35% permanent neck disability, 25% permanent back disability, 25% right leg disability and 100% right knee impairment.[3] *Id.* Moving on to the issue of the Plaintiff's functional limitations, Dr. Anderson stated as follows:

> Because of these disabilities, Matthew should abstain from any activities that require full range of movement of the head and neck, driving of any vehicle larger than a passenger van, kneeling with the right knee or lifting weights heavier than 10 pounds. In addition, for the first two weeks upon return, he should be limited to a four hour work day and thereafter, only if tolerable. Matthew must be permitted to rest as needed to relieve numbness of the buttocks, legs and feet.

R. p. 209. Given Dr. Anderson's specificity regarding the Plaintiff's functional limitations, the ALJ determined that his opinion was entitled to some weight. R. p. 23.

On May 8, 2002, Dr. Antoin Munirji cleared the Plaintiff to return to work, albeit with restrictions. R. p. 227. Although Dr. Munirji did not explain the precise nature of the Plaintiff's work-related restrictions, the ALJ believed that he was most likely referring to the restrictions enumerated in Dr. Anderson's letter. R. p. 23. Since Dr. Munjiri did not explain the basis or scope of the Plaintiff's restrictions, the ALJ accorded his opinion limited weight. *Id.*

Dr. Jay Newberg, a medical consultant, completed a residual functional capacity assessment form on May 27, 2004. R. pp. 659-664. This form dealt with the Plaintiff's exertional limitations. Dr.

---

[3] It is not clear to the Court whether Dr. Anderson's use of the term "impairment" to describe the injury to the Plaintiff's right knee was intended to convey something other than a "disability" of that knee. In any event, it is not necessary for the Court to engage in speculation about that, since Dr. Anderson specifically enumerated the limitations that he believed to be necessary. The letter is not dated. R. p. 209. The ALJ stated that it was written between November, 2001, and September, 2002. R. p. 22.

13

Newberg opined that the Plaintiff could occasionally lift or carry fifty pounds, and that he could frequently lift or carry twenty-five pounds. R. p. 660. Dr. Newberg also indicated that the Plaintiff could stand, walk or sit for about six hours in an eight-hour workday, and that his pushing and pulling abilities were unlimited. *Id.* No postural, manipulative, visual, communicative or environmental limitations were found. R. pp. 661-662.

Noting that Dr. Newberg was a non-examining physician, the ALJ stated that his opinion, though entitled to some weight, was not entitled to the same weight as the opinion of a treating or examining physician. R. p. 24. For this reason, the ALJ determined that the Plaintiff could engage in only sedentary work, even though Dr. Newberg's assessment was consistent with a claimant who could perform medium work. R. pp. 23-24. The ALJ's explanation of the weight given to the opinion of each physician indicates that he was mindful of his duty to consider all of the medical evidence of record, and to explain the degree of weight given to each piece of evidence. *Fargnoli*, 247 F.3d at 42-43.

In determining a claimant's residual functional capacity, the ALJ must account for all of the claimant's exertional and nonexertional limitations in combination. *Burnam*, 682 F.2d at 458. In this case, the ALJ fulfilled his duty. In concluding that the Plaintiff was not statutorily disabled, the ALJ relied on the report of Dr. Tammy Haslett, a licensed psychologist who examined the Plaintiff on April 9, 2004. R. p. 23. Dr. Haslett diagnosed the Plaintiff with major depression, mild to moderate, and assigned him a Global Assessment of Functioning ("GAF") score of 60. R. pp. 637-638. She indicated that the Plaintiff's impairments had no impact on his ability to understand and remember short, simple instructions, and that they had only a slight impact on his ability to carry out short, simple instructions, interact appropriately with supervisors, and interact appropriately with co-workers. R. p. 630. Dr.

Haslett also opined that the Plaintiff's impairments had only a moderate impact on his ability to understand and remember detailed instructions, carry out detailed instructions, make judgments on simple work-related decisions, interact appropriately with the public, respond appropriately to work pressures in a usual work setting and respond appropriately to changes in a routine work setting. *Id.* These findings certainly support the ALJ's determination that the Plaintiff's nonexertional impairments did not preclude him from working.

Relying on Dr. Haslett's findings, Dr. Manella Link, a medical consultant, concluded that the Plaintiff's nonexertional impairments resulted in only mild restrictions on his activities of daily living, moderate difficulties in his maintenance of social functioning, and moderate difficulties in his maintenance of concentration, persistence, or pace. R. p. 654. Dr. Manella further noted that there was insufficient evidence to determine whether the Plaintiff had experienced any episodes of decompensation of extended duration. *Id.* Given the nature of the evidence that was before the ALJ, he certainly acted within his proper zone of discretion in finding that the Plaintiff was not suffering from a disabling nonexertional impairment.

In determining the Plaintiff's residual functional capacity, the ALJ did not view the Plaintiff's impairments in isolation. Instead, he properly considered their combined effect on the Plaintiff's ability to work. *Burnam*, 682 F.2d at 458; R. pp. 23, 26. His hypothetical question to Mr. Heckman included all of the Plaintiff's exertional and nonexertional impairments. R. pp. 66-67. After listening to the ALJ recite the long list of applicable limitations, Mr. Heckman identified jobs existing in the national economy which were consistent with the Plaintiff's residual functional capacity. R. pp. 67-69. Since all of the Plaintiff's limitations were reflected in the ALJ's hypothetical question to Mr. Heckman, it

cannot be said that Mr. Heckman's testimony was defective. *Ramirez v. Barnhart*, 372 F.3d 546, 552-555 (3d Cir. 2004). Although it is true that Mr. Heckman testified that a need for an excessive amount of breaks or absences would preclude the Plaintiff from performing the duties of these jobs, the ALJ was entitled to reject these additional limitations as unsupported by the record. R. p. 69. Only a claimant's credibly established limitations need be submitted to the vocational expert within the context of a hypothetical question. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). For these reasons, the Commissioner met her burden at the fifth step of the sequential evaluation process, and her decision must be affirmed.

Accordingly, given the mandate from Congress that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive," the Court must deny the Plaintiff's Motion for Summary Judgment (Document No. 10) and grant the Commissioner's Motion for Summary Judgment (Document No. 12). 42 U.S.C. § 405(g). An appropriate order follows.

**AND NOW**, this 25th day of January, 2007, this matter coming before the Court on the parties' cross-motions for summary judgment, **IT IS HEREBY ORDERED THAT**: 1) the Plaintiff's Motion for Summary Judgment (Document No. 10) is **DENIED**; and 2) the Defendant's Motion for Summary Judgment (Document No. 12) is **GRANTED**.

BY THE COURT:

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**

cc:   Robert W. Gillikin, Esq.
      John J. Valkovci, Jr., AUSA